This is a case in which the defendant, a married man with four children due in part to being driven by his own addictions, was indicted over four years ago with the intent to, with the conspiring to distribute and possess, with intent to distribute, 50 grams or more of methadone. He eventually pled guilty to count one, there was no formal plea agreement, and the balance of the counts were dismissed. It seems to me that the Bellwether case and that the law is stated 62 years ago by the Supreme Court in the case of Mac Abroda is still good law and still very applicable to the facts of this case. And in that case, the court's holding was fairly succinct. It said, not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The government's contentions that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record, it is his right to be heard, and that is essentially all we're asking for here. In that case, the defendant was serving multiple counts for bank robbery. He found himself in Alcatraz, serving a 40-year sentence, and nevertheless, the U.S. Supreme Court said he was entitled to go back to the Northern District of Ohio and testify and present evidence and have a live hearing as to his allegations that promises were made to him by an assistant United States attorney outside the presence of his own attorney. And that law dealt with the same statute we're dealing with here, albeit amended, time 2, 2255. And in this case, the trial court advises the defendant, you have the right to an appeal, and then he sentences him to the mandatory minimum of 10 years imprisonment. And of course, the message is, you have the right to an appeal, and you're probably not going to like the 10 years. So Mr. Frank was adamant that he told his court-appointed counsel to file an appeal. No appeal was filed. He eventually follows up with a letter to this court inquiring as to the status of it. The troubling part is that there does seem to be a preference, a trend at least in the case law from this court and the Supreme Court, favoring hearings. Favoring quick, simple hearings, but at least a traditional judicial proceeding whereby witnesses are heard, examined, and cross-examined, and then a credibility determination can be made. And it's, I understand Judge Battaglia's reasoning. It's somewhat, it's certainly understandable. Essentially, the defendant wasn't giving up a lot, because in reality, if you want to try to predict what this court might do, the defendant had a real uphill battle. He pled guilty, he had given up the right to challenge evidence against him, and he was given the statutory mandatory minimum. Nevertheless, from the uneducated defendant's perspective, he's told he has the right to an appeal. He decides he wants to appeal. At least that's his contention before this court. Counsel, is there any such thing as harmless error in this situation, if there was error? I appreciate that question, Judge, because it's, what does this really get at, is a good question. But I think the court has answered that, that the right to an appeal is an indispensable right. And ineffective assistance of counsel is presumed to be prejudicial if no appeal gets filed. Do you have to establish ineffective assistance of counsel? Is that the bottom line here? It is. I think that's the, there's a two-prong test, but part of that is satisfied by reason of the fact that… And what about the prejudice prong of that ineffective assistance? I think that's answered by the holdings, not just dicta, but holdings that an appeal is an indispensable right. And to have been deprived of that deprives him of something. I think it's only harmless error if you can predict what this court will do. And I don't think that the trial court, with all due respect, is the determining factor as to saying, you know, I know what the court of appeals is going to do. There's no point to having you do anything more. I'm not going to give you a hearing. And the court is fairly clear as to his reasoning. It relies exactly upon what you've suggested, and that is, he's not going to get anywhere, therefore I find counsel's version more credible. And it still seems to me that a credibility determination has to be based upon a traditional judicial proceeding giving deference to a trier fact who saw and heard witnesses, heard testimony, had this gentleman given an opportunity to present his side in court. So it ranks right up there with right to trial at counsel as an inalienable right, is it? Precisely, Judge. I think it does. I think that right to appeal ranks up to that level. Mr. Wade, are you familiar with Thomas v. United States? I am, Your Honor. That's a 2007 case from this court. Well, no, this is 2013. It's 2013, yes. Right. Okay. And Judge Shepard said the district court is not permitted to make a credibility determination on the affidavits alone. Thus, if the decision turns in credibility, the district court must conduct a hearing. Reading that alone, that seems pretty clear. I guess my question that I have is, if you look at Judge Battalion's opinion, is whether he's making a credibility determination based on the affidavits. I mean, it's a little vague, but he thinks that Huggs' version of the facts are more credible. And then, as you indicated, he's saying it has a little reason to appeal. And so, it goes on. It's the very next sentence. Yeah, so what, do you think that Judge Battalion made a credibility finding based on the affidavits that triggers Thomas? I do, Your Honor. And that, and the very next sentence, I don't have it. I do have it, but it would take me a minute to find it. The order from Judge Battalion, the very next sentence says, because he has such little likelihood of anything on appeal, I make a determination of credibility, and I find Mr. Huggs' story, as Judge Battalion called it, more credible, and discredit the defendants. I think that is, you know, Judge Battalion stated his reason. He says, for that reason, I make this finding. You know, I don't know that it was purely on the affidavits. I think he went beyond that and said, this is perhaps harmless error, because he, the defendant, is never going to succeed on appeal. Well, that was my point. I think the question is, can you distinguish Thomas? You can understand why the rule is, is you can't make a credibility finding on paper. You look at the two affidavits. But the question I have with Judge Battalion's opinion is, well, was he really making it on two pieces of paper, or was he making it on just the logic of the situation that he just didn't believe because Franco wouldn't be wanting an appeal? That's a hard question. I think we're left with the fact that he made a determination, what he did call as a question of credibility, and he made it based upon the only thing in front of him were the two countervailing affidavits. And they're not completely countervailing. Mr. Hugg's affidavit, it's solicited by the government, obviously, and it's fairly carefully worded, saying he doesn't say, Mr. Franco, under no circumstances told me to appeal. He says, I don't remember. And he says, there's nothing in my file to indicate it one way or the other. Had he requested an appeal, I would have filed it. Well, in Judge Battalion's defense, Thomas' decision hadn't come out yet. True. I understand that. So he wasn't ignoring circuit precedent. It hadn't necessarily been established, although Thomas does cite some older law that relies on for that statement, Kingsbury. Right. So you think that Judge Battalion was relying on the cold affidavits enough that it should go back on the basis of Thomas and be heard? That is our position, yes, Your Honor. Just an opportunity to be heard and then see where that leads us. That's the end of my rebuttal. Okay. Thank you. Good afternoon, Mr. Ware. Good afternoon. May it please the court, counsel, my name is David Ware. I'm a special assistant United States attorney for the District of Nebraska, representing the government as the affilee in this matter. As counsel did state previously, this is a matter here on appeal based upon a motion by Appellant Cesar Franco under 28 U.S.C. 2255, alleging that his trial counsel, Jerry Hugg, was ineffective for failing to file an appeal. The district court denied Mr. Franco's motion without a formal evidentiary hearing, and here we are today with the appeal of that. Practically speaking, Mr. Franco is essentially requesting that this court offer him the opportunity to appeal. What can he appeal? The only thing he can appeal on this case is his sentence. He did plead guilty. He did voluntarily give up his right to trial, right to challenge evidence, right to call witnesses, right to cross-examine the government's witnesses. But did he give up his right to appeal? He did not give up his right to appeal. And then the question is whether he told his lawyer or not. Well, he gave up his right to appeal his conviction. He didn't give up his right to appeal his sentence. I think by pleading guilty, you do give up your – without a plea agreement, without some sort of – But he didn't enter a plea agreement or something that gave up his right to appeal his sentence. No, he didn't, Your Honor. In reality – How do you interpret Thomas? How do you distinguish Thomas versus the United States? Thomas, the way that I understand it, generally speaking, when you have a factual dispute, an evidentiary hearing is necessary. However, if the record allows the court to make those credibility determinations, the court can do so. And no formal evidentiary hearing in the vein of calling witnesses, cross-examining witnesses, is necessary. It's the government's contention that the record was sufficient for Judge Battaglia to make that credibility determination. Based upon a few things, first of all, the established record of zealous representation by Mr. Hugg in this case. If you look at the record, Mr. Hugg comes in basically at the 11th hour. This matter had already been set for trial. Trial was just over two weeks away when Mr. Hugg was appointed. Mr. Franco's prior counsel was requested by Mr. Franco to withdraw. He did so. Mr. Hugg came in. Right away, he files a motion to continue the trial. Files a motion to file motions out of time. Then files his pretrial motion, a motion to suppress. And it was a pretty substantial one that challenged stop, searches, and statements. That was litigated. The magistrate found in favor of the government recommended denying the motion, and Mr. Hugg then filed objections to that. Ultimately, the motion to suppress was denied by the district court. The defendant, Mr. Franco, did enter a plea of guilty, voluntarily gave up all of his rights to challenge the conviction on appeal, leaving only the ability to challenge the sentence on appeal. Mr. Franco was given the mandatory minimum of 10 years. That was the lowest possible sentence he could have been given under the law. That was even lower than what the applicable guideline range is by, I believe, a month or so. But nonetheless, it was the absolute lowest he could go. So those factors are in the record, are matters that the trial court were available to the trial court in making that determination, that credibility determination. Also available to the trial court, the district court, was Mr. Franco's own established record in this matter. There was an established record, and I'm not privy to what the reason is that the first counsel was asked to withdraw. But nonetheless, there's an established record of Mr. Franco not getting along with his lawyers. Secondly, there is what I would categorize as discrepancies in the documents that Mr. Franco filed for his 2255 motion. And I'm referring specifically, I believe, to the memorandum in favor of the 2255 motion, wherein Mr. Franco states that he told his lawyer to file an appeal. And on the same page, I believe, a paragraph or two later, he says that his lawyer failed to talk to him about the merits of an appeal. I believe those are inconsistent with each other, and frankly, they fly in the face of Mr. Franco, or strike that Mr. Huggs affidavit, wherein Mr. Huggs states, he and I had a discussion about an appeal. I don't recall him telling me to file an appeal. Had he done so, I would have. It is my practice to do so, and he laid that out. So the district court had all of that in front of it. The district court was able to make credibility determinations. The district court discussed the fact that there was nowhere to go for Mr. Franco on appeal. And for the district court, that was a reason in favor of lending credibility to Mr. Huggs' affidavit. Along the lines of, in reality, who would be telling the truth here? Well, Mr. Huggs gives an aversion of events. Are you asking us to craft an exception to Thomas? I mean, Thomas sets a bright line. Credibility is an issue. You have it here. But are you saying we should have an exception, say, well, for example, here, one of your arguments is that he can't get any lower sentence, and therefore, an appeal would be fruitless. Your Honor, I don't know that Thomas sets that bright line. I would point also to the Holder case, which was an Eighth Circuit case from 2013. And I believe in that case, the Eighth Circuit discussed when a hearing is necessary and not necessary, and they cited to another case. And the rule basically was a hearing is necessary unless the record on its face demonstrates that no claim has been made or the record is basically directly against the moving party. Well, let me tell you the next sentence in Thomas. An evidentiary hearing may be denied, however, if the motion, files, and records of the case conclusively show that the movement is not entitled to relief. Correct. And that's what you're arguing. I believe that is exactly the case here. The district court had an established record in front of it of zealous representation by Mr. Huggs. He goes on to say the court may find this conclusively showing if either the petitioner's allegations accepted as true would not entitle the petitioner relief, or the allegations cannot be accepted as true because they are contradicted by the record, and so on. So you're saying that because he couldn't get any relief on appeal, it's what concluded. Even if he asked his lawyer to appeal and the lawyer didn't, there's no relief? Well, I think that the record affirmatively establishes that Mr. Huggs' version of events were more credible, that there was no request by Mr. Huggs. The lawyer didn't say he didn't ask me. He just said I don't recall. Well, he says I don't recall, but then he says if he would have asked me, I would have filed the appeal. I always file the appeal, even if I feel that the appeal has no merit. I would just file it as an Anders brief. But he states that he takes every step necessary to ensure that the client's rights are met. So I think that that establishes credibility on Mr. Huggs' part, that Mr. Franco, in fact, didn't make his desire known to Mr. Huggs about filing the appeal. Counsel, did I hear you argue a while ago that you think that we have two factors here? We have appeal of guilt or innocence and appeal of the sentence. And the appeal of the sentence, at least in cases like this, might have a lower echelon in terms of this right of appeal. In other words, and also with reference to Thomas, if he got the minimum sentence, if he's appealing his sentence and that's all that he can appeal, he can't get any relief, as Thomas mentioned, is he? Well, I think that if you look at the factors discussed in Thomas and also in Holder, no hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based. Well, that first part where the claim is inadequate on its face, I would argue in substance that's what we have here. There is no possible relief that could be afforded to Mr. Franco on appeal. The only thing that he can appeal is his sentence. He was already given the lowest possible sentence he could have been given. There is nowhere to go on that. He can be relieved from his cell and get a trip to the courthouse. Well, I think that he, and I imagine that's maybe one of the reasons behind this motion, but I don't believe that that's a, obviously under the law, he's got nowhere to go as far as an appeal. And that's a factor that the court, I think, should consider and can consider under Thomas. On top of that, again, I believe that the record affirmatively refutes Mr. Franco's factual assertions that he made aware to Mr. Hugg his desire to appeal, and Mr. Hugg didn't do so. I think that Mr. Hugg's affidavit combined with Mr. Hugg's record in this case versus Mr. Franco's record in this case, on top of the issue of where an appeal can go, altogether gives the district court an adequate basis to make that credibility determination, making a hearing, a formal hearing on this unnecessary. So I will conclude by stating that the counsel performs in a professionally unreasonable manner only by failing to follow a client's express instructions about an appeal. As this court has stated, to be entitled to relief, a petitioner must have made manifest his desire to appeal by expressly instructing the lawyer to appeal. The record demonstrates that that isn't what happened. The record was adequate for the trial court to make that credibility determination, and so fine. I appreciate the court for its time. If there are no more questions, I'll sit down. I don't believe there are any. Thank you. Thank you. Mr. Waite, how much, Ms. Rudolph, how much time? He has six minutes, Your Honor. The first part of counsel's argument, however well stated, really has nothing to do with the issues before you today. Whatever Mr. Hugg did, he did zealously. We're not questioning that. The issue before the court is whether, and not just the relief of our, we're not here to decide what the appeal, how the appeal might turn out. We're here to decide does he have a chance to have a hearing that might enable him to have an appeal. It's a step-by-step process, and I think it's a slippery slope when, with all due respect to district judges, start to predict what the court of appeals is going to do based upon cold statements in the record and without seeing and hearing witnesses. Does it later become counsel's decision that an appeal is worthless? I'm not going to file that appeal. He still has obligations, and it's still up to the court of appeals to give this defendant a right to a hearing and the right to have an appeal. However much the law weighs against him, he still has an indispensable right to an appeal. The balance of Thomas, which I did find, talks about the movement is entitled to a hearing unless the records and affidavits conclusively show that he is not entitled to relief. But in this case, the only relief we're seeking at this juncture is not to decide the appeal, but to decide his right to be heard, his right to say I asked for an appeal, his right to have that appeal. The case I quoted first, the McEbroda case, still has, in its very concluding sentence, a commendable statement of what the law is then, 62 years ago, but it should still be. And that is, specifically, there will always be marginal cases. And this case is not far from that line. But the specific and detailed factual assertions of the petitioner, while improbable, cannot, at this juncture, be said to be incredible. And under those circumstances, the petitioner is clearly entitled to relief. Accordingly, we think the function of 2255, the same section issued here, albeit amended, can be served in this case only by affording a hearing, which its provisions require. So, unless there's anything further, I thank you again for this setting and for your time. Okay, well, thank you. Thank you both. We appreciate your arguments. We appreciate you coming here late in the afternoon to do this. And with that, Judge Smith, are you there?